THE STERN CO. *v.* FRIEDMAN.

STATUTES—CONSTITUTIONAL LAW—EQUITY JURISDICTION.
> Where it is clear that a bill was drawn asking for a declaration of rights under Act No. 150, Pub. Acts 1919, and a case for equity jurisdiction is not made out, the decree entered by the court below cannot be sustained, on appeal, by the Supreme Court, said act having been declared unconstitutional in the case of *Anway* v. *Railway Co., ante*, 592.

Appeal from Kent; Perkins (Willis B.), J. Submitted June 11, 1920. (Docket No. 67.) Decided September 30, 1920.

Bill by The Stern Company against Morris Friedman, surviving partner of M. Friedman & Company, and Alexander W. Hompe under Act No. 150, Pub. Acts 1919, for a declaration of rights in certain leases. From a decree for plaintiff, defendant Friedman appeals. Reversed, and bill dismissed without prejudice.

*Jewell & Smith*, for plaintiff.

*Travis, Merrick. Warner & Johnson*, for defendant Friedman.

MOORE, C. J. On January 15, 1915, Alexander W. Hompe leased to Morris Friedman and Joseph Roth, co-partners doing business under the firm name of M. Friedman & Company, certain premises in the city of Grand Rapids, situated at 116 Monroe avenue, including an extension of said building fronting on Ottawa avenue, and known as No. 123 Ottawa avenue N. W. This lease was for a term of five years from and after

January 1, 1915. The following provision signed by Mr. Hompe was indorsed on the foot of the lease:

"I hereby agree to renew this lease for a further period of five years from the expiration hereof upon the same terms and conditions herein contained, except that the rent which shall be determined by arbitration at least six months before the expiration hereof shall not be less than five thousand dollars per year, plus taxes, assessments and insurance. This option shall expire July 1, 1919."

Under date of June 10, 1916, the plaintiff took a sublease from Messrs. Friedman and Roth covering the above described premises, except the ground floor and basement of the store known as 123 Ottawa avenue N. W., for a period of three years and six months from and after July 1, 1916, which sub-lease contained the following provision:

"It is further agreed that said second party may at its option renew and extend this lease for a further period of five years from the expiration hereof at a rental to be agreed upon between the parties hereto or determined by arbitration, but which shall not be less than $5,000 per annum, written notice of its intention to exercise such option to be given not later than January 1, 1919, and upon such notice being given, said first parties shall forthwith exercise their option with the owner of said premises for such renewal and extension and proceed to carry into effect for the benefit of said second party all rights and privileges of renewal to which they are entitled under their lease from the owner of said premises, and in determining the rental for such additional period the amount received as rent for the remaining portion of the premises described in the lease between said first parties and the owner, or the fair *pro rata* rental value thereof, shall be taken into consideration and due allowance therefor to said second party."

Late in December, 1918, The Stern Company sent by mail to defendant Friedman (said Joseph Roth having died on or about November 12, 1918) a notice as follows:

"To Morris Friedman and Joseph Roth, Co-partners, trading as M. Friedman & Company.

"*Sirs:* You will please take notice that The Stern Company, lessee of the four-story brick building situated at No. 116 Monroe avenue, Grand Rapids, Michigan, and including the portion of said building fronting on Ottawa avenue known as 123 Ottawa avenue N. W., with the exception of the ground floor and basement on Ottawa avenue formerly occupied by Charles A. Kelley and leased by the Anheuser-Busch Brewing Association of St. Louis, Missouri, under lease from you dated June 9, 1916, hereby gives notice under the terms of said lease of its intentions to exercise the option in said lease contained and hereby exercises its option to renew and extend said lease for a further period of five (5) years from the expiration thereof, at a rental to be agreed upon as in said lease provided.

"Dated December, 1918.

"THE STERN COMPANY,
"By HERMAN STERN, President."

After receipt of this notice it does not appear that plaintiff and Friedman took any action with reference to renewing the lease, or agreeing upon the amount of the rental or with reference to arbitration, except that early in the year 1919 Mr. Friedman's attorneys advised the attorneys for the plaintiff that in their judgment the provisions in these leases with reference to renewals thereof were invalid and unenforceable because the minds of the parties had not met upon the amount of rental to be paid or the method whereby the same should be determined by arbitration.

The petition in this case was filed under Act No. 150 of the Public Acts of 1919, asking for a declaration of the rights of the parties to these leases.

Defendant interposed defenses as follows:

1. That the minds of the parties had not met upon the amount of the rental to be paid for the extended period.

2. That the method whereby the amount of rental was to be determined by arbitration had not been agreed upon.

3. That the notice given by The Stern Company was not a sufficient or proper election to renew the lease in the manner provided for in the clause with respect to such renewal, the provision in the lease being that the renewal was to be "at a rental to be agreed upon between the parties hereto, or determined by arbitration," whereas plaintiff in its notice attempted to renew "at a rental to be agreed upon."

4. That the original lease with Mr. Hompe was not subject to renewal at the election of Mr. Friedman, because the original lease was with Friedman and Roth, and Mr. Roth had died, consequently Mr. Hompe could not be compelled to renew with Mr. Friedman alone.

On September 24, 1919, plaintiff filed this bill in chancery, designated as a bill for declaration of rights, making Messrs. Friedman and Hompe defendants in the bill. The case was heard in open court, oral testimony was taken, on the objection of the defendant, as to the agreement about arbitration made as is alleged in a conversation before the lease was drawn. The objection was that the testimony was not competent under the pleadings, was within the statute of frauds, and that it was merged in the writing which was drawn later.

At the conclusion of the hearing a decree was entered, reading in part:

"The method of determining the rent as provided in the lease having been abandoned by the defendant Friedman, plaintiff is authorized to proceed in this case or elsewhere in this court to have the rental value of the premises covered by its lease and the rental value of the remainder of the premises covered in the lease from defendant Hompe to defendant Friedman determined, and upon such determination plaintiff has the right to require defendant Friedman to put it into possession for the renewal term under the conditions of the lease, or to proceed against the defendant Fried-

man and recover from him such damages as he may have sustained by reason of the failure of defendant Friedman to seasonably perform said agreement for renewal.

"No right now exists in either the plaintiff or the defendant Friedman against the defendant Hompe to compel an extension by him of the lease to defendant Friedman."

The case is brought here by appeal.

When the case reached here the court of its own motion raised the question of the constitutionality of Act No. 150 of the Public Acts of 1919, and invited briefs in relation thereto. A brief has been filed upon that subject by the appellee, but the appellant contents itself by saying:

"The bill in this case was filed under the statute heretofore referred to for a declaration of rights. The plaintiff can obtain no relief in this action under any practice existing independent of that act and therefore this suit must stand or fall so far as jurisdiction is concerned upon the validity of that act, the constitutionality of which we understand is now pending in this court in a former case. We therefore do not discuss that question but leave the same to the decision of the court.

"If the act is held unconstitutional then of course this bill will be dismissed. In any event we submit that the renewal contract was incomplete, invalid and unenforceable."

The constitutionality of the act received the full consideration of this court in the case of *Anway* v. *Railway Co., ante,* 592, in which an opinion was handed down at this term of court. We refer to the opinions in that case where it was held that the act was unconstitutional and as to that phase of the case it is controlling here. The prayer for relief in the bill or petition filed to commence this proceeding reads:

"Wherefore, the plaintiff prays that this court make

a binding declaration of the rights of the various parties in and under said written leases, option agreements, notices, etc., and especially of the rights of this plaintiff thereunder."

When the question of the constitutionality of the act ·was raised in this court counsel for plaintiff asked for leave to amend the original bill or petition by inserting a prayer for general relief, claiming that, if this was done, the decree could be sustained, even though Act No. 150, Public Acts of 1919, was held to be unconstitutional. Opposing counsel make no objection to the motion, but we have already indicated what their contention is if Act No. 150 is held to be invalid.

In the brief of the appellant it is said:

"This is a sort of moot case instituted under Act No. 150 of the laws of 1919, to determine what the technical rights of the parties were under these instruments, no damage by reason of the alleged breach thereof being alleged or claimed, and no relief sought which could be granted in this case, except a mere declaration of rights. This bill was filed while the plaintiff was still in possession under the original lease, and ·before the time had arrived when it would be entitled to possession under the extension. As a matter of fact The Stern Company has suffered no damage, and has been in continuous possession of the property since the original lease expired, having, as we understand it, leased the premises direct from the owner, Mr. Hompe, at the minimum rental provided for in his lease."

The attention of counsel for the plaintiff has been called to this statement. They reply that the case is not a moot one and say in part:

"It appears that at the time the building was sublet to The Stern Company by defendant Friedman the latter especially reserved and excepted the ground floor and basement on Ottawa ave., then occupied by ·Chas. A. Kelley, who was engaged in the saloon business. The rental at that time was very profitable to

Mr. Friedman, but through the unexpected change in events, the exodus of the saloon on May 1, 1918, deprived defendant Friedman of a very profitable tenant and that portion of the property was vacant for some time, and as a matter of fact, defendant Friedman made unsuccessful efforts to rent that portion of the building at $50 a month. The Stern Company sublet the property with the exception of the reservation referred to for a comparatively short period of three years and six months, relying upon the understanding and agreement as expressed in the contract with defendant Friedman, that the latter would exercise his option and make a renewal to the plaintiff for a further period of five years. The Stern Company in the planning and developing of its business made calculations therefor only as to that portion of the building covered by its lease, and planned its business with the understanding that a renewal would be made for the extended period of five years. Upon the failure of defendant Friedman to comply with the terms of his agreement and secure the renewal or extension the plaintiff, The Stern Company, was compelled to protect itself by making a lease directly with Mr. Hompe, a copy of which we are enclosing herewith.

"It will be seen from this lease that The Stern Company has been obliged to take the entire building, including the portion which it did not want and had made no plans to use, and which Mr. Friedman had found to be unprofitable to carry after the loss of his tenant Mr. Kelley. It will also be seen from this lease that The Stern Company in addition to the payment of the minimum rental of $5,000 a year, as provided for in the Friedman lease, has also been obliged to assume the payment of all the taxes on the building, and also the cost of keeping up the insurance. The taxes are paid twice a year in this city, in July and December. We are enclosing herewith duplicate of the receipt for the July taxes, showing that the amount of the July instalment of taxes alone amounts to $1,567.73. The December taxes will also have to be paid, and also the cost of keeping up the insurance. These are all substantial elements of damage claimed on behalf of the plaintiff in addition to other damages claimed to have been suffered by them by reason of the

failure of the defendant to comply with the terms of his agreement."

The petition or bill of complaint is very short. It commences "Bill of Declaration of Rights."

We have already quoted from the decree which we are asked to affirm. It is worthy of notice that the decree does not make a final disposition of the case. The rental value of the premises is nowhere averred in the bill of complaint, no proof was made in relation thereto. Counsel in the briefs speak of the valuable improvements that plaintiff has made relying upon an extension of its lease. The bill is silent in relation to improvements and the record does not disclose that any testimony was taken upon that subject. The bill nowhere avers that the plaintiff is without a complete and adequate remedy at law, and the record does not show that to be a fact. It is clear that the pleader in drawing the bill or petition had in mind only that he was asking for a declaration of rights under Act No. 150, and had no thought of preparing what we ordinarily understand as a bill in chancery, the averments of which would authorize a decree in equity.

When Act No. 150 of the Public Acts of 1919 is held to be invalid we think it follows that this proceeding must fail.

The decree is reversed and the petition or bill of complaint is dismissed, but without prejudice to pursue any other remedy open to the appellee, and without costs to either party.

STEERE, BROOKE, FELLOWS, STONE, and BIRD, JJ., concurred with MOORE, C. J.

SHARPE, J. In view of the disposition of the case of *Anway* v. *Railway Co., ante,* 592, handed down herewith, I concur in the result.

CLARK, J., concurred with SHARPE, J.